IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KENDALL GOVAN.,** | * |
| **Plaintiff,** | * |
| v. | *   Civil Case No. SAG-23-2188 |
| **STATE OF MARYLAND,** *et al.*, | * |
| **Defendants.** | * |

## MEMORANDUM OPINION

On March 3, 2023, Plaintiff Kendall Govan filed this lawsuit in the Circuit Court for Baltimore City against the State of Maryland ("the State"), Department of Public Safety and Correctional Services ("DPSCS"), Division of Corrections ("DOC"), and Ronald Weber, the then-Acting Warden of the Western Correctional Institution ("WCI") (collectively "Defendants"). Plaintiff asserted fourteen separate causes of actions against the Defendants arising out of injuries that he suffered from a gang-related assault while he was incarcerated at WCI. Currently pending is Defendants' motion to dismiss, ECF 8. Plaintiff opposed the motion and Defendants filed a reply. ECF 13, 14. No hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the following reasons, Defendants' motion to dismiss will be granted as to Plaintiff's federal claims and this Court declines to exercise supplemental jurisdiction over the remaining state law claims, which can be adjudicated best in state court.

I.   **FACTUAL BACKGROUND**

The following facts are derived from Plaintiff's Complaint. ECF 2. In 2014, Plaintiff provided information to detectives regarding an incident in which a member of the Black Guerilla Family ("BGF") harmed a child. *Id.* ¶ 2. "Defendants" disclosed to the BGF gang member that

Mr. Govan had provided that information.[1] *Id.* ¶ 27. "Defendants" then transferred the BGF gang member to the Western Correctional Institution ("WCI"), where Plaintiff was housed. *Id.*

In 2020, while running laps in the recreation yard of his unit at WCI, Plaintiff was attacked by two BGF gang members on the basketball court. *Id.* ¶ 20. Other BGF gang members joined in the attack. *Id.* Plaintiff was punched, hit with objects, and stabbed. *Id.* Although an officer was supposed to be monitoring the inmates in the yard and another officer was supposed to be monitoring the video cameras depicting the yard, nothing was done to intervene. *Id.* ¶¶ 30–31. After five minutes, Plaintiff extricated himself and ran to the emergency button in the yard, pressing it six to eight times, but no guard responded. *Id.* ¶ 21. Plaintiff's attackers then attacked him again with knives, stabbing him multiple times. *Id.* ¶ 22. "Upon information and belief," officers observed the attack, but failed to respond by "negligently and/or intentionally absent[ing] themselves from the area." *Id.* ¶ 23. Finally, an officer in a "shack" about 30 feet from the yard called in a code. *Id.* ¶ 24. The BGF attackers stopped stabbing Plaintiff and ran away. *Id.* By that time, Plaintiff suffered serious physical injuries resulting in his hospitalization. *Id.* ¶¶ 25–26.

## II. LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[1] The Complaint does not explain how the "Defendants," who are government agencies and Weber, knew that Plaintiff had provided information to unspecified "detectives" about a BGF member six years prior.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]" (quotation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts]

in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.    ANALYSIS

The Complaint alleges fourteen claims, but only the first six involve a federal question. This Court agrees with Defendants that those six counts fail to state a claim and must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's Complaint alleges facts that, if proved true, might evidence grave misconduct or at least negligence by certain correctional officers. But that circumstance does not permit the type of imprecise pleading evidenced in this case.[2] Initially, Plaintiff now concedes two of the points

---

[2] Plaintiff's Complaint can best be described as heavy on purported causes of action and light on facts to support them. This appears to have been the result of a "sue first and ask questions later" approach borne of an imminent limitations bar. But even in a time crunch, an attorney has an ethical responsibility to assert only plausible causes of action supported by facts, which is not the case here. Plaintiff's protestation that Defendants focus "primarily on whether Plaintiff sued the correct parties rather than addressing whether Plaintiff's rights were actually violated," ECF 13 at 12, misconstrues Plaintiff's pleading responsibilities. Plaintiffs must only plead plausible causes of action against the correct persons or entities, not just any claims they can think of against anyone they can muster. Additionally, there are patent inconsistencies within Plaintiff's Complaint. For example, paragraph 17 states, "The Conduct of the agents or employees of the Defendants described herein . . . was committed without malice or gross negligence," whereas the contents of Count XI (Gross Negligence) plead exactly the opposite: that grossly negligent and malicious actions were taken. The unnecessary complexity and imprecision render this Complaint at least violative of

raised by Defendants: (1) that his four counts brought pursuant to 28 U.S.C. § 1983 cannot lie against the State, DPSCS, or DOC and only remain viable against the sole individual defendant, Weber, and (2) that his claim in Count V, alleging a violation of 28 U.S.C. § 1986, is time-barred. Thus, the only federal issues remaining for disposition involve the § 1983 claims against Weber and the claim in Count IV alleging a conspiracy to interfere with civil rights. This Court will address each in turn.

As to Weber, the Complaint is devoid of any factual allegations about his individual conduct. The lone mention of Weber is the following paragraph in the "PARTIES" section of the complaint:

> Defendant Ronald Weber (hereinafter "Defendant Weber") is an adult citizen of the United States and at all times relevant hereto was the Assistant Warden for the Maryland Western Correctional Institution whose conduct referred to herein was at all times relevant to his employment, and who is responsible for the pattern and practice of misconduct discussed herein and was at all times relevant hereto acting under color of state law. The position of Warden was vacant at the Maryland Western Correctional Institution at the time of the occurrence. Defendant Weber had the capacity and authority to hire, fire, and supervise final policymakers, including all individually named defendants herein. Defendant Weber is currently the Warden for the Maryland Western Correctional Institution.

ECF 2 ¶ 16. Weber's name is not mentioned anywhere else in the Complaint, which contains no factual allegations regarding any actions he took.

It is well settled that, under § 1983, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Technically, "the term 'supervisory liability' is a misnomer," because a supervisory official can only be liable "for his or her own misconduct;" supervisors cannot have § 1983 liability under a *respondeat superior* theory. *Iqbal*, 556 U.S. at 677; *accord*

---

basic pleading standards, which require a short and plain statement of the claim for relief along with facts making the claim plausible against the defendants being sued.

*Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)).

"Supervisory liability" exists only to address those cases in which a supervising authority's "indifference or tacit authorization of subordinates' misconduct may be a causative factor" in constitutional harm suffered at the hand of those subordinates. *Shaw*, 13 F.3d at 798 (quoting *Slakan*, 737 F.2d at 372–73). Specifically, plaintiffs alleging supervisory liability must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (alteration omitted) (quoting *Shaw*, 13 F.3d at 799).

Plaintiff's Complaint contains no facts about who the perpetrating officers were, what their history was, or what Weber knew or should have known about those officers before the incident involving Plaintiff. Without facts making such "actual or constructive knowledge" plausible, Plaintiff has not stated a viable § 1983 claim against Weber in his supervisory capacity, and Counts I, II, III, and VI are subject to dismissal.

Plaintiff's civil conspiracy claim under 28 U.S.C. § 1985(3) fares no better. Such a claim requires five elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*A Soc'y Without a Name v. Virginia,* 655 F.3d 342, 346 (4th Cir. 2011) (quoting *Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir. 1995). Specifically, there must be a "meeting of the minds" or an "agreement" to violate constitutional rights. *Id.* (quoting *Simmons,* 47 F.3d at 1376).

Again, Plaintiff's Complaint is utterly devoid of any such facts. It contains simply a conclusory allegation that, "Two or more Defendants and/or Defendants' employees or agents conspired to commit the acts against Mr. Govan, directly causing his serious injury." ECF 2 ¶ 77. In his opposition, Plaintiff suggests that three officers, stationed in different locations, "must have been involved in the conspiracy and planned in advance." ECF 13 at 20. But a litigant cannot amend his pleading through motions briefing. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). And contrary to his suggestion in the briefing, Plaintiff does not assert any facts about advanced planning by those officers in the Complaint. Furthermore, even if he did assert such facts, the intracorporate conspiracy doctrine would seem to preclude the assertion of a civil conspiracy claim against any of the state entity defendants presently named in the Complaint. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 352–53 (4th Cir. 2013). Finally, as noted above, the Complaint fails to allege that the sole individual defendant, Weber, did anything at all to involve himself in a conspiracy. Count V must also be dismissed.

With all of the federal claims dismissed, this Court must consider how to proceed with the remaining eight state law claims. Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" over state law claims if, *inter alia*, the court "has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." § 1367(c). The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the

values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Id.* (citation and footnote omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

This litigation was originally filed in state court and has just begun. For reasons explained above, the federal law claims have dropped out of the lawsuit. The remaining state law issues presented in this case, including whether *Longtin* claims extend to state governments and whether Article 24 protects convicted prisoners, are better adjudicated in state court given Maryland's strong interest in adjudicating such disputes under its own laws and protocols. Thus, after considering the *Carnegie-Mellon* factors, this Court will decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims.

### IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF 8, will be granted. Counts I to VI will be dismissed without prejudice and this Court will decline to reach the remaining issues or to exercise supplemental jurisdiction over Plaintiff's state law claims, which may be refiled in state court. This case will be CLOSED. A separate order follows.


Dated: December 20, 2023                                     /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge